**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
JOSIE MARIE MALAVE           :     Civ. No. 3:16CV00661(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :     March 22, 2017
ACTING COMMISSIONER,         :
SOCIAL SECURITY ADMINISTRATION:
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Josie Marie Malave ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Act. Plaintiff has moved to reverse the decision of the Commissioner, or in the alternative, for remand to the Social Security Administration for a new hearing. [Doc. #17].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner and/or Remanding the Matter for Hearing **[Doc. #17]** is **DENIED**, and

defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #19]** is **GRANTED.**[1]

I.   **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for SSI on April 9, 2013, alleging disability beginning January 1, 2006. See Certified Transcript of the Administrative Record, compiled on July 22, 2016, (hereinafter "Tr.") 201-10. Plaintiff's application was denied initially on July 10, 2013, see Tr. 128-31, and upon reconsideration on November 4, 2013. See Tr. 139-47.

On October 29, 2014, plaintiff, represented by Attorney Richard Grabow, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Alexander Peter Borré.[3] See Tr. 36-76. Vocational Expert ("VE") Courtney Olds also testified at the hearing. See Tr. 68-74; see also Tr. 171-73. On December 19, 2014, the ALJ issued an unfavorable decision. See Tr. 16-35. On

---

[1] Plaintiff filed a Reply to Defendant's Motion to Affirm on February 14, 2017, one day after the filing deadline for any reply briefs. [Doc. #20]. See D. Conn. L. Civ. R. 7(d) (reply briefs are due within fourteen (14) days of a memorandum in opposition). The Court nevertheless considers the arguments raised therein.

[2] With her motion, plaintiff also filed a Stipulation of Facts. See Doc. #17-2.

[3] At the administrative hearing, plaintiff amended her alleged onset date to January 1, 2014. See Tr. 40.

March 18, 2016, the Appeals Council denied plaintiff's request
for review, thereby making the ALJ's December 19, 2014, decision
the final decision of the Commissioner. See Tr. 1-6. The case is
now ripe for review under 42 U.S.C. §405(g).[4]

Plaintiff timely filed this action for review and now moves
to reverse the Commissioner's decision, or in the alternative,
to remand for a new hearing. [Doc. #17]. On appeal, plaintiff
argues:

1. The ALJ failed to address the significance of Dr. Harvey's
   signature on the Medical Report for Incapacity authored by
   plaintiff's treating clinician;

2. The ALJ failed to evaluate the Medical Report for
   Incapacity as authored by an "acceptable medical source";
   and

3. The ALJ failed to provide good reasons for discounting the
   Medical Report for Incapacity authored by plaintiff's
   treating clinician.

See Doc. #17-1 at 3-8; Doc. #20 at 1-4. As set forth below, the
Court finds that ALJ Borré did not err as contended.

---

[4] Plaintiff also unsuccessfully applied for SSI benefits in 2009.
See Tr. 77-97. That decision is not now before the Court.

~ 3 ~

## II.  **STANDARD OF REVIEW**

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing Treadwell v. Schweiker, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the
record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-
61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human
Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to
determine whether substantial evidence exists to support that

finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A)(alterations added); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per curiam</u>). If and only if the claimant does <u>not</u> have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

<u>Id.</u>

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." <u>Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv.</u>, 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003) (alteration added)); <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009) (<u>per curiam</u>)). The Residual Functional Capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. <u>See</u> 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 31. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2014, the amended alleged onset date. See Tr. 21-22. At step two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease; affective disorder; and anxiety disorder. See Tr. 22. The ALJ determined that plaintiff's asthma, headaches and diabetes mellitus were non-severe impairments. See id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal

the severity of any of the listed impairments in 20 C.F.R. Pt.
404, Subpt. P, App. 1. See Tr. 16. The ALJ specifically
considered Listings 1.04 (disorders of the spine), 12.04
(affective disorders), 12.06 (anxiety-related disorders), and
12.09 (substance addiction disorders). See Tr. 22-23. Before
moving on to step four, the ALJ found plaintiff had the RFC

> to perform medium work as defined in 20 CFR 416.967(c)
> except the claimant is able to occasionally lift and
> carry up to 50 pounds, frequently lift and carry up to
> 25 pounds, frequently push and pull the same amounts,
> sit, stand, and walk 6 hours each out of an 8 hour
> workday, and occasionally climb ramps and stairs,
> ladders, ropes, and scaffolds. The claimant is also able
> to understand, remember, and carry out simple
> instructions with normal breaks throughout a normal
> workday and workweek, work and respond appropriately to
> co-workers and supervisors on an occasional basis, with
> no public contact, and not in close proximity (defined
> as within 20 feet) to more than 20 people. The claimant
> is able to make simple work-related decisions.

Tr. 25. At step four, the ALJ concluded that plaintiff was
capable of performing past relevant work as a cleaner. See Tr.
29. Although the ALJ could have concluded his analysis at step
four, he made alternative findings at step five, and after
considering plaintiff's age, education, work experience and RFC,
as well as the testimony of the VE, the ALJ found that other
jobs existed in significant numbers in the national economy that
plaintiff could perform. See Tr. 30-31. Finally, the ALJ also
concluded that plaintiff's "substance use disorder(s) is not a
contributing factor material to the determination of disability"

because plaintiff "was continually symptomatic, including during periods of sobriety[,]" and her "cannabis use was only occasional and sporadic." Tr. 31.

## V.   **DISCUSSION**

Plaintiff raises three interrelated arguments in support of reversal or remand, all of which relate to the treating physician rule.

### A.   **Relevant Law**

"The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations and quotation marks omitted); see also 20 C.F.R. §416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §416.927(c)(2).

Only "acceptable medical sources" can provide medical opinions and are considered treating sources whose opinions are entitled to controlling weight. <u>See</u> 20 C.F.R. §416.927(a)(2), (c). Acceptable medical sources include, <u>inter alia</u>, licensed physicians and licensed or certified psychologists. <u>See</u> 20 C.F.R. §416.913(a). APRNs, social workers, and physician assistants, amongst others, are not acceptable medical sources, but are rather considered "other sources." <u>See</u> 20 C.F.R. §416.913(d)(1)-(4); <u>see also</u> Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Opinion evidence from these "other sources" may be used to show "the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work[.]" 20 C.F.R. §416.913(d).

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. <u>See</u> 20 C.F.R. §416.927(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4.

**B.    Analysis**

   **1.    Significance of Co-Signature**

Plaintiff first contends that the ALJ erroneously weighed
the medical source statement of clinician Davin Williams,
because he failed to consider that the statement was co-signed
by licensed psychologist Dr. Lashanda Harvey. See Doc. #17-1 at
4. Plaintiff contends that the ALJ's failure "to make the
necessary determination [of] how co-signed opinion evidence
should be classified[,]" and classification of this statement as
from a non-treating source, are errors that warrant remand. Id.
at 6. Defendant acknowledges that the ALJ did not expressly
discuss that the statement was co-signed by Dr. Harvey, but
contends the record does not support a finding that Dr. Harvey
was plaintiff's treating psychiatrist. See Doc. #19-1 at 5. In
reply, plaintiff contends that the Court cannot accept this post
hoc rationalization for the agency's action. See Doc. #20 at 1-
2.

Plaintiff's contention that the ALJ misclassified Mr.
Williams' statement as coming from a "non-treating source" is
not supported by the record. The ALJ explicitly stated that Mr.
Williams' statement was from plaintiff's "treating clinician."
Tr. 28. The ALJ correctly noted that Mr. Williams is a non-
acceptable medical source. See id. This categorization is

correct because as a "clinician," Mr. Williams is not considered an "acceptable medical source" under the Regulations. See 20 C.F.R. 416.913(a)(1)-(5) (listing acceptable medical sources who can provide evidence to establish an impairment, none of which include a "clinician").

Nevertheless, plaintiff contends that Mr. Williams' statement should be treated as though it were authored by an acceptable source because it is co-signed by a licensed psychologist. See Doc. #17-1 at 6. When an "other source's" opinion is co-signed by an acceptable medical source, "but there are no records or other evidence to show that the [acceptable medical source] treated [plaintiff], the ['other source's'] opinion does not constitute the opinion of the [acceptable medical source]." Goulart v. Colvin, No. 3:15CV1573(WIG), 2017 WL 253949, at *4 (D. Conn. Jan. 20, 2017) (quoting Perez v. Colvin, No. 3:13CV868(HBF), 2014 WL 4852836, at *26 (D. Conn. Apr. 17, 2014), report and recommendation adopted, 2014 4852848 (Sept. 29, 2014)) (alterations added). Plaintiff does not contend, nor is there any evidence in the record showing, that Dr. Harvey ever treated, examined, or saw plaintiff. Indeed, the record does not include a single mention of Dr. Harvey's name other than on the medical source statement at issue. "As such, the ALJ was not required to treat the opinion as one from an

"'acceptable medical source.'" Id.; see also Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (ALJ did not err in refusing to find physicians' opinions controlling due to the physicians' "limited and remote contact" with plaintiff.).

In support of her argument, plaintiff primarily relies on the case of Keith v. Astrue, 553 F. Supp. 2d 291 (W.D.N.Y. 2008), for the proposition that "it was improper for the ALJ to discount notes and reports that were also signed by the physician as 'merely being the opinions of a [non-acceptable source.']" Doc. #17-1 at 6; see also Doc. #20 at 2-3. In Keith, the court found that "the ALJ committed errors of law that require a remand[,]" where the ALJ rejected a medical opinion as being from a non-acceptable source, when it was co-signed by a physician. Keith, 553 F. Supp. 2d at 300. Contrary to the circumstances here, in Keith, the co-signing physician "met with Plaintiff on numerous occasions, at which times he generally completed an assessment form, which included assessments of Plaintiff's mood and affect." Id. at 301. By contrast, here, there is no evidence that Dr. Harvey ever met with plaintiff. Accordingly, Keith is not persuasive.[5]

---

[5] In reply, plaintiff also cites Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003), a Ninth Circuit case which is not

Although not addressed by either plaintiff or defendant, some courts have ordered remand where the ALJ failed to acknowledge an acceptable source's co-signature on an opinion authored by an "other source." Such cases, however, are largely distinguishable.

The sole opinion that appears to be on point and in support of plaintiff's position is Godin v. Astrue, in which the district court remanded where the ALJ failed to acknowledge the co-signature of an acceptable source on the opinion of an APRN. See Godin v. Astrue, No. 3:11CV881(SRU), 2013 WL 1246791, at *2 (D. Conn. Mar. 27, 2013). There, the Court found that although nothing in the record suggested that the co-signing physician "saw or examined [claimant] more than once (if at all)", remand was warranted because there was "'no apparent indication that [the] opinion was not independently considered and endorsed by the co-signing physician' and, as a result, the 'ALJ should have explained whether or not he considered these opinions to be the opinions of an appropriate medical source, and if not, then why.'" Id. at *3 (quoting Payne v. Astrue, No. 3:10CV1565(JCH), 2011 WL 2471288, at *5 (D. Conn. June 21, 2011)). Although Godin

binding on this Court and is directly at odds with controlling precedent in this Circuit.

supports plaintiff's arguments, later decisions, including those discussed below, call Godin into doubt.

A district court in the Northern District of New York remanded a matter where the ALJ failed to consider the co-signature of a treating source on a social worker's opinion. See Lewis v. Colvin, No. 12CV01317(WGY), 2014 WL 6687484, at *4-5 (N.D.N.Y. Nov. 25, 2014). In Lewis, however, the record reflected that the co-signing physician had treated the claimant. See id.; see also VanGoden v. Astrue, No. 3:11CV1044(GLS), 2013 WL 420761, at *2-3 (N.D.N.Y. Feb. 1, 2013) (failure to consider treating psychiatrist's signature on social worker's evaluation warranted remand where psychiatrist had personally evaluated claimant). By contrast, here, as noted, there is no evidence that Dr. Harvey ever treated or saw plaintiff.

A court in this District also ordered remand where the opinion of an APRN was co-signed by an acceptable medical source, but "[i]t was not clear whether the ALJ evaluated these opinions under the treating physician rule[,]" because the ALJ repeatedly referred to the opinions as that of the APRN. Johnson v. Colvin, No. 3:14CV1446(MPS), 2016 WL 659664, at *3 (D. Conn. Feb. 18, 2016). There too, however, the co-signing physician had been "treating [claimant] for a number of years." Id. Again, by

contrast, the record here is devoid of any evidence that Dr. Harvey treated plaintiff. Additionally, as will be discussed further below, the ALJ considered the same factors required under the treating physician rule in evaluating Mr. Williams' opinion.

In Mainella v. Colvin, the Eastern District of New York rejected the argument that the ALJ erred by failing to acknowledge that a medical source statement was prepared in part by claimant's "treating physician." See Mainella v. Colvin, No. 13CV2453, 2014 WL 183957, at *3 (E.D.N.Y. Jan. 14, 2014). There, the court stated: "It is true that the ALJ did not specifically mention [plaintiff's treating physician] or otherwise engage with the question of whether the report was prepared by [claimant's] treating physician." Id. (alterations added). Nevertheless, the court declined to remand because, inter alia, the record did not indicate the role claimant's physician played in her care. Further, the court found that the medical source statement had been rejected "not because it came from a non-physician source, but because the ALJ found it inconsistent with the other record evidence." Id. at *4. Accordingly, the court concluded that "the ALJ's reasoning applies equally well to reject the Medical Source Statement even if it represents the opinion of a treating physician." Id. (citation omitted).

Similarly here, the record is devoid of any evidence as to Dr. Harvey's role in plaintiff's treatment, and as discussed below, the ALJ did not reject Mr. Williams' opinion solely on the basis that it was authored by an unacceptable source, but rather on several other grounds which would apply to an analysis of the opinion under the treating physician rule. Accordingly, pursuant the reasoning of Mainella, remand is not warranted under the circumstances presented here.

In Griffin v. Colvin, the court also addressed the failure of an ALJ to consider the co-signature of a physician on a mental impairment questionnaire authored by an "other source." See Griffin v. Colvin, No. 3:15CV105(JGM), 2016 WL 912164, at *14 (D. Conn. Mar. 7, 2016). There, the court found reversible error where the ignored co-signature was that of claimant's "treating psychiatrist[,]" and the ALJ summarily rejected the opinion without explanation. Id. at *14, *16. Of particular note, the Griffin court explicitly acknowledged: "This is not a case in which there is no evidence that the co-signing psychiatrist ever personally examined the plaintiff or had an ongoing treatment or a physician-patient relationship." Id. at *14 (emphasis in original) (footnote omitted). In other words, had the psychiatrist not treated the claimant, then the ALJ's failure to consider the psychiatrist's co-signature would not

have been of great importance. See also Baldwin v. Colvin, No. 3:15CV1462(JGM), 2016 WL 7018520, at *10 (D. Conn. Dec. 1, 2016) (distinguishing cases where co-signing physician did not treat claimant). Additionally, as discussed further below, the ALJ did not "summarily reject" the opinion of Mr. Williams without explanation.

Accordingly, because there is no evidence that Dr. Harvey ever treated, or otherwise saw plaintiff, the Court finds no reversible error in the ALJ's failure to address the significance of Dr. Harvey's signature on Mr. Williams' opinion.

### 2.    Reasons for Discounting Mr. Williams' Opinion

Plaintiff next contends that the ALJ erred by not providing "good reasons" for discounting Mr. Williams' medical source statement. See Doc. #17-1 at 7; Doc. #20 at4. To the contrary, not only did the ALJ provide "good reasons" for discounting this opinion, he explicitly considered the factors required under the treating physician rule. In weighing this opinion, the ALJ stated:

> The claimant's treating clinician, Mr. Davin Williams, indicated in a report dated October 7, 2014, that she was treated for personality disorder, PTSD, bipolar disorder, asthma and myalgia, and had a GAF score of 60. He indicated that her symptoms hinder her from competitive employment due to frequent mood swings, agitation, poor judgment, easy annoyance, and panic attacks. Exhibit B11F. It was also noted that her symptoms impair her ability to sit still, she has trouble relaxing and focusing on tasks, is easily annoyed and

frustrated, and has poor judgment. Exhibit B11F. Little
weight was afforded to this opinion, as Mr. Williams is
a clinician, and thus not an acceptable medical source.
SSE 06-03p. Furthermore, Mr. Williams did not offer a
function-by-function assessment and instead concludes
that the claimant's symptoms hinder her from competitive
employment, which is an issue reserved to the
Commissioner, and is a conclusion that is inconsistent
with finding of a GAF score of 60. Mr. Williams' opinion
is also inconsistent with the claimant's reports to
treating providers in April of 2014 that she was actively
looking for employment and was doing well on her
medication regime. Exhibit B10F. Consultative examiner
Dr. Dodenhoff also concluded that the claimant did not
have the same limitations as Mr. Williams indicated, but
instead indicated that the claimant should be able to
respond appropriately to supervision and coworkers in a
work setting. Exhibit B7F. As such, this opinion was
afforded little weight.

Tr. 28-29.

    First, the ALJ implicitly considered the nature and length

of Mr. Williams' treating relationship with plaintiff. The ALJ

not only categorized Mr. Williams as plaintiff's "treating

clinician," but he also explicitly considered Mr. Williams'

treatment notes throughout his decision. See Tr. 26-29

(referencing Exhibits B3F and B10F, which contain medical

records from Charter Oak Health Center where Mr. Williams

provides services).[6]

--------

[6] The Second Circuit does not require a "slavish recitation of
each and every factor [of 20 C.F.R. 416.927(c)] where the ALJ's
reasoning and adherence to the regulation are clear." Atwater v.
Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v.
Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

Next, the ALJ properly noted that Mr. Williams had not provided a function-by-function assessment, but instead concluded that plaintiff's symptoms hindered her from competitive employment. See Tr. 28. Although plaintiff contends that the form of the opinion is irrelevant, and this is not a valid reason to discount the opinion, she fails to acknowledge the well-established principle that the decision of whether a plaintiff is capable of gainful employment is reserved for the Commissioner. See 20 C.F.R. §416.927(d)(1) ("Opinions on some issues ... are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case[.] (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. ... A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. §416.913(b)-(c) (setting forth what should be contained in medical reports and statements about what a claimant can still do); see also Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner."

(citations omitted)); <u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 398 (D. Conn. 2012), <u>aff'd</u>, 515 F. App'x 32 (2d Cir. 2013) ("[A] treating physician's statement that the claimant is disabled cannot itself be determinative because that determination is reserved to the Commissioner." (citation and internal quotation marks omitted)).

The ALJ next discounted Mr. Williams' statement because it is both internally inconsistent and inconsistent with other evidence in the record. <u>See</u> Tr. 28-29. First, the ALJ noted that Mr. Williams assessed plaintiff with a GAF score of 60 at the time of the opinion, which is inconsistent with the conclusion that plaintiff is unable to engage in gainful employment. <u>See</u> Tr. 28. Plaintiff correctly notes that the GAF scale has been "discontinued" and asserts that, as a result, it "should not be deemed substantial contrary evidence." Doc. #17-1 at 8. As an initial matter, the ALJ is correct that a GAF of 60, which indicates only "moderate symptoms", is inconsistent with the opinion that plaintiff is incapable of gainful employment. <u>See</u> <u>Zabala v. Astrue</u>, 595 F.3d 402, 406 n.3 (2d Cir. 2010) ("A GAF in the range of 51 to 60 indicates "moderate symptoms (<u>e.g.</u>, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-

workers)." (citation omitted)). Plaintiff is correct that "[t]he S.S.A. has never viewed GAF scores as dispositive." Wiggins v. Colvin, No. 3:13CV1181(MPS), 2015 WL 5050144, at *4 (D. Conn. Aug. 25, 2015) (citation omitted). However, here, the ALJ did not place dispositive weight on plaintiff's GAF score, but rather considered it as one of several bases upon which to discount Mr. Williams' opinion. This is acceptable. Cf. id. ("[C]ourts in this Circuit have criticized ALJs for relying on GAF scores alone as a basis for rejecting a treating opinion." (emphasis added) (collecting cases)); see also Camille v. Colvin, 104 F. Supp. 3d 329, 342 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016) (no error where "ALJ did not rely on Plaintiff's GAF scores alone" to discount treating physician opinion); Randel v. Colvin, No. 5:14CV1449(GLS)(CFH), 2016 WL 1223363, at *16 (N.D.N.Y. Mar. 4, 2016), report and recommendation adopted, 2016 WL 1238240 (Mar. 28, 2016) ("The ALJ's consideration of this inconsistency [between the treating physician's opinion and his assessed GAF scores] is valid, as consistency is a factor the Regulations direct the ALJ to consider in reviewing a determination and because he did not rely 'solely' on the basis of an alleged inconsistency between a

treating physician's findings and his GAF scores." (collecting cases)). Accordingly, the Court finds no error.[7]

The ALJ next discounted Mr. Williams' opinion on the ground that it was "also inconsistent with the claimant's reports to treating providers in April of 2014 that she was actively looking for employment and was doing well on her medication regimen." Tr. 28 (citing Exhibit B10F). The exhibit cited to contains documents from Charter Oak Health Center. In addition to stating the proposition the ALJ cited them for, these records also contradict the extent of limitations assessed by Mr. Williams. See Tr. 533-34 (November 22, 2013, treatment note: "Negative for psychiatric symptoms" and plaintiff was "Alert and Oriented"); Tr. 541 (January 31, 2014, treatment note: "Negative for psychiatric symptoms" and plaintiff was "Alert and Oriented"); Tr. 544 (April 4, 2014, medication management note: "mood stable, mildly anxious, affect appropriate, she denied any mania, hypomania, psychosis ... but reports that she recently tried working at a data place and after 3 days had a 'panic attack' and anxiety, so she left and never went back. VN is

---

[7] The Court notes that the ALJ did not limit his discussion of plaintiff's GAF scores to the weighing of the medical opinion evidence. See Tr. 29 ("The undersigned has also taken into consideration and given some weight to the GAF scores noted within the record.").

helping [h]er to go b[]ureau of rehab for testing and possible job referral post testing and she is happy about it."); Tr. 548 (June 9, 2014, medication management note: "Feels stressed due to no job, finances, relationship issues and free time/boredem (sic), leading to anxiety from time to time.").[8]

The ALJ also discounted Mr. Williams' opinion because it conflicted with the opinion of the consultative examiner, Dr. Dodenhoff, who opined, inter alia, that plaintiff "should be able to respond appropriately to supervision and coworkers in a work setting." Tr. 29 (citing Exhibit B7F). In addition to a physical examination, Dr. Dodenhoff conducted a mental status

---

[8] Visiting Nurse notes also contradict the extent of limitations assessed in Mr. Williams' opinion. See, e.g., Tr. 590 (September 9, 2014, Home Health Certification and Plan of Care noting plaintiff's depressed, irritable, and anxious mental status, a fair prognosis, and no activity restrictions); Tr. 591 (June 12, 2014, Recertification Summary noting that plaintiff: is "alert and oriented"; her daily anxiety had lessened; and that she "started to babysit in order to help with her financial problems"); Tr. 593 (August 14, 2014, Recertification Summary noting that plaintiff "reported some increased anxiety that comes over her once and a while" but that medication "has been of great help during these episodes" and that plaintiff "is gaining more insight into what is needed in order to maintain stability and harmony in her home during times of increased anxiety" (sic)); Tr. 595 (October 14, 2014, Recertification Summary: "She continues to respond that she is depressed when asked but her facial expression and demeanor are incongruent with her responses. She reports that she cuts herself daily, but there are no visible signs of fresh cuts. ... She reports to be managing her anxiety with medication. There has been no cutting.").

examination of plaintiff in which she was alert and oriented in all spheres, maintained good eye contact, and had appropriate mood and affect. <u>See</u> Tr. 456. Dr. Dodenhoff determined that plaintiff experienced depression, anxiety, bipolar disorder, and command hallucinations, but ultimately concluded that plaintiff "is able to understand, remember and carryout instructions[,]" and that she "should be able to respond appropriately to supervision and coworkers in a work setting." Tr. 456. "[A]s a matter of law, the opinions of consultative examiners constitute substantial evidence which may be used to discount the opinion of a treating physician." <u>Pabon v. Comm'r of Soc. Sec.</u>, No. 14CV1954(PAE)(FM), 2015 WL 4620047, at *12 (S.D.N.Y. Aug. 3, 2015) (citations omitted), <u>report and recommendation adopted sub nom.</u> 2015 WL 5319265 (Sept. 11, 2015); <u>see also</u> <u>Rosier v. Colvin</u>, 586 F. App'x 756, 758 (2d Cir. 2014) (concluding ALJ properly discounted opinion of treating physician because it was inconsistent with other evidence in the record, including "evaluations by a consultative examiner"). Accordingly, the Court finds no error in the ALJ's discounting of Mr. Williams' opinion on the basis that it contradicted that of a consultative examiner.

Thus, for the reasons stated, the Court finds the ALJ provided "good reasons" for discounting Mr. Williams' opinion,

all of which are supported by substantial evidence, and there is no violation of the treating physician rule as contended by plaintiff.[9]

## VI.  CONCLUSION

For the reasons set forth herein, the defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #19]** is **GRANTED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner and/or Remanding the Matter for Hearing **[Doc. #17]** is **DENIED.**

This is not a recommended ruling. The parties consented to proceed before a United State Magistrate Judge on July 26, 2016 [Doc. #12], with any appeal to be made directly to the Court of Appeals. See Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 22nd day of March, 2017.

                                        /s/
                            HON. SARAH A. L. MERRIAM
                            UNITED STATES MAGISTRATE JUDGE

---

[9] Even if the Court were to find error, any error would be harmless, as reevaluation of the Williams opinion would not change the result reached by the ALJ. See Snyder v. Colvin, No. 5:13CV585(GLS)(ESH), 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014) ("[A]dministrative legal error is harmless when the same result would have been reached had the error not occurred." (citation omitted)).